Filed 8/25/25  P. v. Moreno CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE, | B337310 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA035489) |
| v. | |
| RENE RAY MORENO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maria Davalos, Judge.  Affirmed.

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

**INTRODUCTION**

A jury convicted defendant Rene Ray Moreno (Moreno) on 17 counts of robbery and found true the allegations that he used a handgun in committing those robberies. In 2024, Moreno was resentenced under Penal Code section 1172.75, which provides relief to individuals serving prison terms that include sentencing enhancements that were subsequently rendered invalid by legislative changes to the Penal Code.[1] At the resentencing hearing, the trial court reduced Moreno's prison sentence by striking a sentencing enhancement now rendered invalid under section 1172.75 and reducing his prison term on one count of robbery. The trial court otherwise reimposed Moreno's original sentence.

Moreno appeals the resentencing order, arguing the trial court abused its discretion in refusing to strike or dismiss any of the firearm enhancements imposed against him under section 12022.5. We find no abuse of discretion by the trial court and affirm the resentencing order.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.      *Factual Background*

Moreno was involved in a series of four robberies in Southern California between November and December of 1995.[2] In each robbery, Moreno, accompanied by one or two others, would enter a business and herd

---

[1]      All further statutory references are to the Penal Code unless otherwise stated.

[2]      The background facts in this section are taken from the unpublished appellate opinion affirming Moreno's conviction. (*In re Moreno* (Feb. 26, 1998, No. B118797 [nonpub. opn.].) We cite the facts not for their truth, but only for the basis of Moreno's conviction. (See *People v. Woodell* (1998) 17 Cal.4th 448, 459–460.)

any employees and customers into a back room at gunpoint with directions to leave behind any belongings. The victims would later emerge to discover their belongings had been taken and the business's phone had been disabled or destroyed.

At the time of his arrest, Moreno was found to be in possession of methamphetamine and showed symptoms of methamphetamine intoxication.

II.    *Procedural Background*

A.    *Conviction and Original Sentence*

Moreno was charged with 18 counts of second-degree robbery (§ 211; counts 1 through 18), each involving a different victim from one of his four robberies.[3] It was further alleged that Moreno personally used a handgun in the commission of each count of robbery (§ 12022.5, subd. (a)). Moreno was also charged with one count of possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a); count 19). Finally, it was alleged that Moreno failed to remain free from prison custody for five years following a previous felony conviction in 1992 (§ 667.5, subd. (b).)

On October 28, 1996, a jury found Moreno guilty on all counts except one count of robbery (count 16). On the robbery convictions (counts 1-15, 17, and 18), the jury also found true the firearm enhancements alleged under section 12022.5, subdivision (a).

---

[3]    Counts 1 through 4 arose from Moreno's involvement in the robbery of the A to Z Hair and Nails salon. Counts 5 through 9 arose from the robbery of the Pioneer Nails and Hair salon. Counts 10 through 15 arose from the robbery of the Royal Nails salon. Counts 17 and 18 arose from the robbery of the restaurant La Pizza Loca.

The trial court subsequently found true the prior prison term enhancement alleged under section 667.5, subdivision (b). The court proceeded to sentence Moreno to a cumulative prison term of 54 years.[4]

B.    *Moreno's Petition for Resentencing*

On October 28, 2022, the trial court issued an order stating the California Department of Corrections and Rehabilitation (CDCR) identified Moreno as eligible for resentencing under section 1172.75. The trial court subsequently set a hearing date for Moreno's resentencing and appointed counsel for him.

In advance of the resentencing hearing, Moreno's counsel filed a petition arguing for a reduction in Moreno's sentence under section 1172.75. In addition to asking the court to dismiss the one-year prior prison term enhancement under section 667.5, subdivision (b), Moreno argued for relief under section 1385 as amended by Senate Bill No. 620 (2017-2018 Reg. Sess.) (SB 620) and Senate Bill No. 81 (2021-2022 Reg. Sess.) (SB 81). Moreno pointed out that the majority of his 54-year sentence was the result of the firearm enhancements imposed under section 12022.5. He also claimed his aggregate sentence of 54 years for "four acts of robbery" was "clearly very disproportionate." The petition made clear that Moreno "is now 53 years old

_____

[4]    On count 1, the trial court sentenced Moreno to 15 years, calculated as the upper term of five years, plus 10 years for the firearm enhancement (§ 12022.5). On each of the remaining robbery counts (counts 2-15 and 17-18), the court imposed identical terms of two years and four months, for a total term of 37 years and four months. The sentence on each of these counts was calculated as a base term of one-third of the three-year midterm (one year), plus an additional 16 months for the firearm enhancement under section 12022.5. The court also sentenced Moreno to an eight-month term on count 19. Finally, the court imposed an additional one-year term for the prior prison term enhancement under 667.5, subdivision (b).

4

and in poor health. In some ways, he effectively received a life sentence. His wife, who was a childhood friend, and a companion for the last 20 years of his imprisonment, passed on before he could be released. For her, this *was* a life sentence." Moreno also pointed out that he had spent 28 years—the majority of his life—in prison for these crimes and was taking medication for seizures and high blood pressure. Moreno asked the court to either "remove the gun enhancement from his sentence, or in the alternative, to impose it only once on one count, and as a lesser term."

As support for this proposed sentence reduction, Moreno's petition focused on his post-conviction behavior. He acknowledged that he had an extensive disciplinary record while incarcerated, dating back to 2000. This included multiple violations for making or possessing alcohol, possessing a contraband cell phone, theft, disruptive behavior, as well as battery and fighting. Moreno also admitted that in 2009, he was "validated by prison staff as an associate of the Mexican Mafia. As a result of this assessment, he was placed into the Secure Housing Unit for an indefinite term." Additionally, in 2012, the decision was made to keep Moreno in the Secure Housing Unit "due to ongoing concerns about involvement with the Mexican Mafia." Similarly, at a parole hearing in 2020, the parole board found Moreno's "gang status to be ambiguous."

Moreno's petition also acknowledged he had an extensive criminal history before his current incarceration. His juvenile record included 16 entries when Moreno was between the ages of 13 and 18, including four counts of robbery when he was 14 years old. Moreno's criminal record as an adult contained 12 entries predating his convictions in this case. Ten of those entries were drug-related charges for possession of a controlled substance, and the remaining two were for Vehicle Code violations.

5

While Moreno acknowledged his criminal history and prior association with the Mexican Mafia, Moreno argued that he subsequently disavowed all involvement with the Mexican Mafia or gangs "because of changes in his personal life, such as attending church, and [his] marriage."  He also argued that he "has had no history of violence for fourteen years.  He has been discipline-free for five years.  He has maintained sobriety for twenty years."  Moreno also pointed to several commendations in his record for being a good worker in the prison laundry.  Moreno also noted that he completed several courses while incarcerated, including courses in denial management, victim awareness, criminal and addictive thinking, and anger management, among others.  Moreno also wrote letters of remorse to his victims.  Moreno asked the trial court to take these mitigating circumstances and rehabilitative post-conviction behavior into account in resentencing him.

C.    *Resentencing Hearing*

On February 28, 2024, the trial court resentenced Moreno.  The court began by striking the one-year prison term enhancement imposed under section 667.5, subdivision (b).  The court then turned to resentencing Moore on the other elements of his conviction.  The court reviewed Moreno's file before the hearing and noted that at his last parole hearing, the parole board determined that Moreno "posed an unreasonable risk to public safety."  The court also noted Moreno had several incidents of misconduct in his file but made a "huge turnaround" in the last five years and had completed numerous classes.  The court also mentioned that Moreno appeared to have "distanced himself" from the Mexican Mafia since 2014 or 2015.[5]

---

[5]    Moreno denied being a member of the Mexican Mafia, though he admitted he used to associate with gang members in prison.

The court assigned particular significance to an incident in 2022 where one of Moreno's parole hearings was postponed because the parole board received a letter accusing Moreno of threatening his stepchildren to pressure them into writing letters on his behalf to the board. Moreno's file included a letter from 2023 stating the accusation was investigated and corroborated. The court also noted that in 2022 or 2023 Moreno was found stealing "state property" while in prison.

Moreno argued that he had begun to turn his life around and rehabilitate himself when he got married in 2018. He also stated that he was a born-again Christian and had been going to church for the last two years. He argued that when his wife passed away in 2022, this led to "a little road of bad stuff, which you would expect someone who [loses] his primary support system outside the prison system, it would affect any of us in a really bad way."

The court found Moreno's backslide into bad behavior troubling as "A lot of people have loved ones that they lose and they don't resort to bad or—and/or criminal conduct. And I think that's the concern. His reaction to his life events. And that's why I'm of the opinion the parole board is not confident that if he's released right now, that he could handle significant life events." The court was also troubled by the recent accusation that he was threatening individuals, stating that Moreno needed "to present that he is actually truly a changed man who is not going to react to significant life events in a manner in which people feel threatened to the point where they have to write letters to the Department of Corrections. · I mean, that's pretty significant. It's huge."

The trial court also commended Moreno on letters he wrote to the victims of his crimes, noting it was "progress toward going inward and

reflecting inside as to what you did and really understanding the impact that you had. Not only on yourself, obviously, but your family and then the victims. Especially the victims." Finally, the court noted a report from one of Moreno's parole hearings indicated that he "still represent[s] a moderate risk for violence."

Turning to the firearm enhancements under section 12022.5, the court noted it considered the fact that the enhancements resulted in a sentence of over 20 years. However, the court was troubled by Moreno's decision to become associated with the Mexican Mafia while in prison. "[W]e have other sentenced prisoners who come before the court, and they never join the mafia. They get college degrees. They're exemplary prisoners. And then you have to compare that. That's my frame of reference. I get somebody who comes before me and has college degrees, and even gets a master [sic], and then somebody who comes before me that joins the Mexican Mafia. So that's my frame of reference."

The court noted that in resentencing Moreno, it considered the mitigating factors of Moreno's age at the time of the crimes, his history of drug use, and the mention in his file of physical abuse by his parents. However, the court determined these mitigating factors were neutralized by aggravating circumstances, such as "the manner in which the crime was carried out, the planning, [and] the professionalism." The court also determined Moreno's crimes "involved an attempted taking of great monetary value" and involved "violent conduct that indicates a serious danger to society." The court also noted Moreno "had a lot of prior convictions," including four convictions for robbery as a juvenile.

Weighing these different factors from Moreno's file, the trial court determined it would not dismiss any of the section 12022.5 enhancements

8

"because the court finds that there is a likelihood that the dismissal of the enhancements would result in physical injury or other serious dangers to others."  While the court declined to strike or dismiss any of the section 12022.5 enhancements, it did reduce Moreno's sentence on count 1 from the 15-year sentence originally imposed to a seven-year term.[6]  The trial court then re-imposed Moreno's original sentence on the remaining counts, resulting in a total reduction in Moreno's prison term from 54 years to 45 years.

Moreno timely appealed the trial court's resentencing order.

## DISCUSSION

I.   *Legal Standards*

When Moreno was convicted and sentenced, defendants were subject to a one-year prison term enhancement under section 667.5, subdivision (b), for each true finding that they had served a prior prison term and had thereafter not remained free from custody for at least five years.  Effective January 1, 2020, section 667.5, subdivision (b), was amended to limit prior prison term enhancements to prior terms imposed for certain sexually violent offenses.  (Stats. 2019, ch. 590, § 1; *People v. Escobedo* (2023) 95 Cal.App.5th 440, 445 (*Escobedo*).)  The Legislature subsequently enacted Senate Bill No. 483, which made these changes to section 667.5 retroactive.  (Stats. 2021, ch. 728, § 1; *Escobedo*, *supra*, 95 Cal.App.5th at p. 445.)  Senate Bill No. 483 went into effect on January 1, 2022, and added section 1172.75 to the Penal Code. (*Ibid.*)

---

[6]    Moreno's new sentence on count 1 was calculated as the mid-term of three years plus the mid-term of four years on the section 12022.5 enhancement.

Section 1172.75 invalidates prior prison term sentencing enhancements imposed under section 667.5, subdivision (b), unless imposed for a sexually violent offense.  (§ 1172.75, subd. (a).)  It also requires the CDCR to identify the individuals in its custody serving a term that includes a prior prison term enhancement.  (*Id.*, subd. (b).)  If the court determines the defendant's judgment includes a prior prison term enhancement, the court must appoint counsel, recall the sentence, and resentence the defendant.  (*Id.*, subds. (c), (d)(5).)

In addition to striking any invalid section 667.5 enhancements, "section 1172.75 requires full resentencing where now-invalid enhancements were imposed." (*People v. Espino* (2024) 104 Cal.App.5th 188, 195, review granted Oct. 23, 2024, S286987; accord *People v. Monroe* (2022) 85 Cal.App.5th 393, 402 ["By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements"].)  In resentencing a defendant, the court must apply current sentencing rules and "any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."  (§ 1172.75, subds. (c), (d)(2).)

Resentencing under section 1172.75 "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds . . . that imposing a lesser sentence would endanger public safety."  (§ 1172.75, subd. (d)(1).)  When resentencing a defendant, the court must "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion."  (*Id.*, subd. (d)(2).)  The court may consider post-conviction factors, including the defendant's disciplinary record while incarcerated.  (*Id.*, subd. (d)(3).)

We review for abuse of discretion the trial court's sentencing decisions. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 847 ["The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest'"]; accord *People v. Carmony* (2004) 33 Cal.4th 367, 371, 375 (*Carmony*); *People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*); *People v. Garcia* (2024) 101 Cal.App.5th 848, 856.)

"The abuse of discretion standard is highly deferential." (*Mendoza, supra,* 88 Cal.App.5th at p. 298.) "First, '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citations.] Second, a "'decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.''" [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra,* 33 Cal.4th at pp. 376–377.)

## II. *Firearm Enhancements under Section 12022.5*

Moreno contends the trial court abused its discretion under SB 620 and SB 81 in declining to strike or dismiss any of the firearm enhancements imposed against him under section 12022.5.

A. *SB 620 and SB 81*

Section 12022.5, subdivision (a), provides in relevant part that: "[A]ny person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years." When Moreno was initially sentenced in 1996, if an enhancement under former section 12022.5 was alleged and found true, its imposition was mandatory. (See, e.g., *People v. Ledesma* (1997) 16 Cal.4th 90, 94–95.) However, in 2017, the Legislature enacted SB 620, which amended subdivision (c) of section 12022.5 to remove this prohibition. (*People v. McDavid* (2024) 15 Cal.5th 1015, 1024; *People v. Johnson* (2022) 83 Cal.App.5th 1074, 1085.) As amended by SB 620, subdivision (c) now provides that "[t]he court may, in the interest of justice pursuant to [s]ection 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

Subsequently, SB 81 "and Assembly Bill No. 200 (2021-2022 Reg. Sess.) . . . respectively added, and later amended, section 1385, subdivision (c)." (*People v. Cota* (2023) 97 Cal.App.5th 318, 334.) Section 1385, subdivision (c)(1), now provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." As added by SB 81, subdivision (c)(2) "provides that a sentencing court '[i]n exercising its discretion' to dismiss a sentencing enhancement 'shall consider and afford great weight to evidence offered by the defendant to prove' certain enumerated mitigating circumstances, and '[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.'" (*People v. Walker* (2024) 16 Cal.5th 1024, 1028 (*Walker*).) In this

12

context, the phrase "'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

Section 1385, subdivision (c)(1), provides that a trial court "shall dismiss an enhancement if it is in the furtherance of justice to do so." Our colleagues in the Sixth District rejected the argument that the presence of mitigating factors under section 1385, subdivision (c)(2) creates a "rebuttable presumption" in favor of striking an enhancement. (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1097–1098 (*Ortiz*).) Instead, in exercising its discretion under section 1385, "the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement." (*Id.* at p. 1098.) In *Walker*, our California Supreme Court expressly endorsed the *Ortiz* court's holding, stating, "We conclude that the plain language of section 1385, subdivision (c)(2) contemplates that a trial court will exercise its sentencing discretion in a manner consistent with the *Ortiz* court's understanding." (*Walker*, *supra*, 16 Cal.5th at p. 1029.)

## B.   *Analysis*

Under section 1385, subdivision (c)(1) and *Walker*, the trial court had the discretion to decline to strike any or all of Moreno's firearm enhancements if it determined that doing so would endanger public safety or was not in the interest of justice. This is true even though Moreno presented evidence of factors in mitigation under section 1385, subdivision (c)(2).[7]

---

[7]    Moreno argues two such mitigating factors are present in this case: (1) multiple enhancements under section 12022.5 were applied to his case (§ 1385, subd. (c)(2)(B)), and (2) the application of the firearm enhancements would result in a cumulative prison sentence of over 20 years (§ 1385, subd. (c)(2)(C)).

Moreno argues the trial court must have abused its discretion in resentencing him because, "Due to appellant's lengthy sentence, the dismissal of just one firearm enhancement attached to one of the subordinate counts would not endanger public safety because the sentence reduction would be minimal in relation to the remaining aggregate sentence imposed by the court." We disagree.

As Moreno acknowledges, the trial court here expressly found that dismissing any of the firearm enhancements would endanger public safety: "So . . . the court is not going to dismiss any of the enhancements because the court finds that there is a likelihood that the dismissal of the enhancements would result in physical injury or other serious dangers to others." The record shows the trial court understood it had the discretion under section 1385 to dismiss any or all of the firearm enhancements.

Moreno argues that the trial court's finding was insufficient because it did not make individualized findings of danger to public safety as to each enhancement separately. Even assuming Moreno is correct that the trial court was obligated to make a separate and independent determination as to each enhancement, we find no abuse of discretion by the trial court. Moreno claims the court must have failed to perform this individualized assessment because it "never explained how the dismissal of just one of the firearm enhancements would have endangered public safety." But Moreno offers no authority suggesting the trial court had any obligation to make such an explanation on the record.

Contrary to Moreno's suggestion, the trial court had no obligation to state its reasoning in declining to strike any of the enhancements or make any individualized findings as to each specific enhancement on the record. While section 1385 requires a trial court to state its reasons for striking an

14

enhancement, there is no reciprocal requirement that the trial court state its reasons for declining to strike an enhancement. (§ 1385, subd. (a).) "On appeal, the defense bears the burden of showing both error and prejudice." (*People v. Smith* (2015) 61 Cal.4th 18, 39.) "[W]here a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order." (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; *People v. Brown* (2007) 147 Cal.App.4th 1213, 1229 ["Error may not be presumed from a silent record"].)

Nothing in the record on appeal suggests the trial court did not perform the individualized assessment that Moreno claims was required. As Moreno admits, the trial court's statements at the resentencing hearing showed it understood that it had the discretion to dismiss or strike any of Moreno's firearm enhancements. The court also demonstrated that it understood the enhancements did not stand or fall together, as it reduced the enhancement imposed on count 1 from ten years to four years without altering the sentence imposed on the remaining enhancements. After thoroughly examining Moreno's resentencing petition and file, the court decided not to dismiss any of the enhancements because it determined there was a likelihood that the dismissal of the enhancements would endanger public safety. (§ 1385, subd. (c)(2).)

The trial court's finding on this point is supported by ample evidence in the record. On appeal, Moreno argues that dismissal of some of his firearm enhancements was warranted "when his effort at rehabilitation was considered." As the trial court noted, however, Moreno had a long history of misconduct while in prison, including significant ties to the Mexican Mafia for several years. And while Moreno eventually began making significant efforts at rehabilitation in 2018, there was also evidence in the record that he

had recently threatened members of his own family in an attempt to coerce them into writing letters on his behalf to the parole board. On appeal, Moreno simply ignores this contrary evidence supporting the trial court's determination.

The record before us shows the trial court carefully engaged in the balancing required by section 1385 when considering whether to strike Moreno's firearm enhancements. (*Walker*, *supra*, 16 Cal.5th at p. 1036.) We therefore find no abuse of discretion in the trial court's conclusion that a further reduction or dismissal of Moreno's firearm enhancements would pose a danger to public safety.

## DISPOSITION

The postconviction order resentencing Moreno is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, P. J.

We concur:

COLLINS, J.

MORI, J.

16